

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FILED
APR 1 2015
USDC WP S NY

LUXURY GOODS INTERNATIONAL
(LGI) S.A.,

    Plaintiff,

    v.

JEANINE HELLER d/b/a
WHAT ABOUT YVES,

    Defendant.

CIVIL ACTION NO.
JUDGE(S):

# 15 CV 2967

## JUDGE BUCHWALD

## COMPLAINT

The Plaintiff, Luxury Goods International (LGI) S.A. (hereinafter "LGI" or "Plaintiff")
alleges for its Complaint against Defendant Jeanine Heller d/b/a What About Yves (hereinafter
"Defendant" or "Heller") the following:

### I.    PARTIES

1.    Plaintiff LGI is a corporation duly organized and existing by virtue of the laws of
Switzerland with its principal place of business at Via Industria 19
6814, Cadempino.

2.    Upon information and belief, Defendant Heller is an individual doing business as
What About Yves.  Upon information and belief, Defendant Heller resides in this judicial district
at 250 Bowery, #3E, New York, New York 10012.

3.    Upon information and belief, Defendant is transacting business in the United
States and in this Judicial District through the Defendant's showroom located at 263 Eleventh

Avenue, Floor 5, New York, New York 10001, and through the Internet website at www.whataboutyves.com.

4.      Defendant transacts substantial and not isolated business activities within and throughout the State of New York.

5.      Defendant has engaged in trademark infringement, and other wrongful and tortious conduct within the Southern District of New York including, but not limited to the unauthorized manufacture, purchase, importation, sale, distribution, and promotion of products embodying Plaintiff's trademark in and around the State of New York and throughout the United States and without the Plaintiff's authorization or consent.

## II.      JURISDICTION AND VENUE

6.      On information and belief, Defendant has committed and is committing acts of Trademark Infringement, Trademark Dilution, False Designation of Origin, and Unfair Competition, as hereinafter alleged, in this District, through manufacturing, displaying, selling, importing, distributing, advertising and using Plaintiff's trademarked materials.

7.      This action is for Trademark Infringement, Trademark Dilution, False Designation of Origin and Unfair Competition, arising under the Trademark Act of 1946, as amended (the Lanham Act 15 U.S.C. § 1051 et seq.), and under the Common Law, and Deceptive Trade Practices and Injury to Business Reputation, arising under N.Y. General Business Law §§ 349 and 360-l.

8.      This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, 1338(a) (acts of Congress relating to copyrights and acts of Congress relating to trademarks), 1338(b) (pendent jurisdiction over Unfair Competition and Deceptive Trade Practices claims), 15 U.S.C.

§ 1125 (actions arising under the Trademark Act). This Court has supplemental jurisdiction over the state law pursuant to 28 U.S.C. § 1367(a).

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because the Defendant resides in this Judicial District and/or a substantial part of the events or acts giving rise to the claim occurred in this Judicial District and LGI is suffering harm in this Judicial District.

### III.     FACTS COMMON TO ALL CLAIMS

#### A. LGI's Business and Trademarks

10.     The Yves Saint Laurent (hereinafter, "YSL") fashion house and brand were founded in 1961 by designer Yves Saint Laurent and Pierre Bergé. YSL is a luxury fashion house known for designing men's and women's ready-to-wear clothing and accessories such as handbags, jewelry, and eyewear, among other goods and services.

11.     YSL is one of the most prestigious fashion houses and is world-renown for innovative and trend-setting ready-to-wear clothing and fashion accessories. YSL designs are among the most sought-after fashions in the industry. Over fifty years, YSL has pioneered fashion with groundbreaking and iconic designs, which are routinely showcased by top celebrities and style icons. This tradition continues strongly into the present day with YSL's association with celebrities such as Cara Delevingne, Beck Hansen, Kate Moss and Angelina Jolie, to name a few.

12.     Plaintiff LGI and YSL, the renowned French fashion house and fashion brand, belong to the same holding company.

13.     Plaintiff LGI is the owner of the entire right, title and interest in Federal trademark registrations for goods and services including, among others, the following famous, valid, subsisting, incontestable and un-cancelled trademark registrations:

| | |
|---|---|
| YVES SAINT LAURENT | Registration No. 0767211 |
| YVES SAINT LAURENT | Registration No. 0851445 |
| YVES SAINT LAURENT | Registration No. 0901660 |
| YVESSAINTLAURENT RIVE GAUCHE (stylized) | Registration No. 1680439 |
| YVES SAINT LAURENT RIVE GAUCHE | Registration No. 1699148 |
| YVES SAINT LAURENT | Registration No. 1712998 |
| YVESSAINTLAURENT (Stylized) | Registration No. 1745483 |
| YVES SAINT LAURENT RIVE GAUCHE | Registration No. 1770566 |

Collectively referred to as the "YSL Marks." Copies of the Certificates of Registration issued by the USPTO for these marks are attached as Exhibit A. These registrations are incontestable, as Plaintiff has filed the required affidavits of incontestability pursuant to § 15 of the Trademark Act, with the Commissioner of Patents and Trademarks.

14.     The YSL Marks have been in use in U.S. commerce for more than fifty (50) years.

15.     The YSL Marks are used on a variety of products, including clothing, shoes, handbags, jewelry, accessories and eyewear.

16.     In 2012, French fashion designer Hedi Slimane was named as YSL's creative director.

17.     That same year, YSL introduced the ready-to-wear line SAINT LAURENT PARIS.

18.     In furtherance of this effort, Plaintiff LGI sought to register the marks SAINT LAURENT and SAINT LAURENT PARIS before the U.S. Patent and Trademark Office.

19.     LGI is the owner of the entire right, title, and interest in U.S. Trademark Application No. 85799140 for the mark SAINT LAURENT and U.S. Trademark Application No. 85799160 for the mark SAINT LAURENT PARIS, both of which are presently pending before the U.S. Patent and Trademark Office (the "SAINT LAURENT Marks").   True and correct copies of printouts from the U.S. Trademark Office website of Application Serial Nos. 85799140 and 85799160 are attached hereto has Exhibit B.

20.     The YSL Marks (*see supra* at 13) and the SAINT LAURENT Marks are referred to collectively as LGI's Marks.  Products bearing LGI's Marks are available throughout the U.S. in department stores, in Yves Saint Laurent boutiques, in Yves Saint Laurent outlets and on the Internet through YSL's own website.

21.     All products bearing the LGI's Marks are renowned for their high quality and are identified and recognized as being exclusively from Plaintiff by virtue of its use of the marks.

22.     LGI's Marks are featured prominently in advertisements that regularly appear in nationally-circulating magazines and seen by hundreds of millions of people.

23.     In addition to Plaintiff's own advertising bearing LGI's Marks, the LGI Marks have garnered and continue to reap significant unsolicited media coverage in the United States. Products bearing LGI's Marks have been featured in various U.S. publications, including Vogue, Women's Wear Daily, GQ Magazine, the New York Times, New York Magazine, Harper's BAZAAR, and W Magazine, among others.

24.     Products bearing the LGI's Marks are widely photographed and referenced in publications when worn by celebrities, including Angelina Jolie, Kate Moss, Jessica Chastain, Julia Roberts, Heidi Klum, Kate Beckinsale, Jessica Simpson, Eva Longoria, and many others.

25.     LGI's Marks are well-known by U.S. consumers of all social and demographic groups.

26.     The YSL Marks are famous in the U.S.

27.     The SAINT LAURENT Marks have garnered extensive press coverage since at least as early as 2012, including over the Internet and through various press media have also been subject to significant advertising and unsolicited media coverage since 2012.  As a result, the SAINT LAURENT Marks are well-known and recognized by U.S. consumers.

28.     LGI's Marks have been widely promoted, both in the United States and throughout the world, and are among the world's most famous and widely recognized marks. Consumers, potential consumers and other members of the public and fashion industry recognize that products bearing LGI's Marks originate exclusively with Plaintiff.

**B.**      **Defendant's Infringing Conduct**

29.     Upon information and belief, Defendant Jeanine Heller d/b/a What About Yves ("Defendant") designs, distributes and sells clothing, including t-shirts and sweatshirts in interstate commerce.

30.     Upon information and belief, Defendant established her business in 2013.

31.     Upon information and belief, the focus of Defendant's clothing has been and continues to be high end luxury brands, trademarks, logos and names.

32.     Upon information and belief, Defendant sells her clothing through her website located at http://www.whataboutyves.com and also though various third party retailers, including but not limited to fashion retailer Kitson and other third party websites.

33.     Upon information and belief, Defendant is manufacturing, displaying, offering for sale and selling on her website and selling to third party retailers, t-shirts, sweatshirts, tank tops and hats bearing the phrase AIN'T LAURENT WITHOUT YVES (hereinafter the "Infringing Products").     True and correct printouts from http://www.whataboutyves.com showing Defendant's Infringing Products are attached as Exhibit C.

34.     At least as early as January 23, 2013, Ms. Heller was on notice of LGI's objections and claims when Plaintiff, through its counsel in France, contacted Ms. Heller regarding her unauthorized use of the AIN'T LAURENT WITHOUT YVES mark.   Counsel advised Ms. Heller of Plaintiff's objection to the use of the AIN'T LAURENT WITHOUT YVES mark on clothing and apparel and advised that Plaintiff considered Ms. Heller's conduct trademark infringement.

35.     Defendant did not respond to Plaintiff's representatives' correspondence of January 23, 2013.

36.     Plaintiff followed up its initial correspondence with reminders to Defendant of January 30, 2013, February 1, 2013 and February 4, 2013.

37.     Defendant did not respond to reminders sent by Plaintiff.

38.     Despite Plaintiff's letter and continual reminders, Defendant continued her infringing conduct.

39.     Upon information and belief, Defendant filed U.S. Trademark Application Serial No. 85897120 for the mark AIN'T LAURENT WITHOUT YVES (the "Infringing Mark") for

"Clothing namely shirts, t-shirts, polo t-shirts, button down shirts, long and short sleeved shirts, sweatshirts, blouses, hooded sweatshirts, spaghetti strap shirts, dresses, skirts, bathing suits, jackets, jerseys, coats, tank tops, tube tops, vests, pants, sweatpants, khakis, shorts, underwear, jeans, trousers; bikinis, swimwear; headwear; footwear; belts, ties, gloves, socks" in Class 25 on April 6, 2013.

40.     On July 29, 2013, the U.S. Trademark Office issued an Office Action refusing registration of U.S. Trademark Application Serial No. 85897120 for the mark AIN'T LAURENT WITHOUT YVES for "Clothing namely shirts, t-shirts, polo t-shirts, button down shirts, long and short sleeved shirts, sweatshirts, blouses, hooded sweatshirts, spaghetti strap shirts, dresses, skirts, bathing suits, jackets, jerseys, coats, tank tops, tube tops, vests, pants, sweatpants, khakis, shorts, underwear, jeans, trousers; bikinis, swimwear; headwear; footwear; belts, ties, gloves, socks" in Class 25.  A true and correct copy of the July 29, 2013 Office Action issued in regard to U.S. Trademark Application Serial No. 85897120 is attached hereto as Exhibit D.

41.     The July 29, 2013 Office Action refused registration to U.S. Trademark Application Serial No. 85897120 for the mark AIN'T LAURENT WITHOUT YVES for a number of reasons.  Specifically, the July 29, 2013 Office Action refused registration to the AIN'T LAURENT WITHOUT YVES mark  due to a likelihood of confusion with LGI's U.S. Trademark Registration Nos. 0767211; 1712998 (both for YVES SAINT LAURENT word marks); 1699148 (YVES SAINT LAURENT RIVE GAUCHE); 1745483 (YVES SAINT LAURENT (stylized)); and 1680439 (YVES SAINT LAURENT RIVE GAUCHE & design).

42.     The July 29, 2013 Office Action specifically notes that the AIN'T LAURENT WITHOUT YVES mark is similar to  marks belonging to LGI, as embodied in  U.S. Trademark Registration Nos. 0767211; 1712998; 1699148; 1745483; and 1680439.  *See* Exhibit D.

43. The July 29, 2013 Office Action also notes that Ms. Heller's goods ("Clothing namely shirts, t-shirts, polo t-shirts, button down shirts, long and short sleeved shirts, sweatshirts, blouses, hooded sweatshirts, spaghetti strap shirts, dresses, skirts, bathing suits, jackets, jerseys, coats, tank tops, tube tops, vests, pants, sweatpants, khakis, shorts, underwear, jeans, trousers; bikinis, swimwear; headwear; footwear; belts, ties, gloves, socks" in Class 25) are similar to the goods recited in U.S. Trademark Registration Nos. 0767211; 1712998; 1699148; 1745483; and 1680439 belonging to LGI. *See* Exhibit D.

44. The July 29, 2013 Office Action concludes: "Accordingly, because the marks are confusingly similar, and because the goods of the applicant and registrant travel in the same channels of trade, the applied-for mark is refused because of a likelihood of confusion with the mark in U.S. Registration No. 0767211; 1712998; 1699148; 1745483; and 1680439." *See* Exhibit D.

45. The July 29, 2013 Office Action also refused registration to the AIN'T LAURENT WITHOUT YVES mark because it falsely suggested a connection between Defendant and Yves Saint Laurent. The Examiner noted that "Yves Saint Laurent is so famous that consumers would presume a connection." *See* Exhibit D.

46. The Defendant did not contest or argue against the Examiner's refusals in the July 29, 2013 Office Action on the basis of likelihood of confusion and false connection.

47. Due to the failure to response on or before the Trademark Office issued a Notice of Abandonment with regard to Defendant's U.S. Trademark Application Serial No. 85897120 for the mark AIN'T LAURENT WITHOUT YVES on February 24, 2014.

48. The Defendant's U.S. Trademark Application Serial No. 85897120 for the mark AIN'T LAURENT WITHOUT YVES was marked abandoned dating back to January 30, 2014.

49.     Meanwhile on September 23, 2013, French counsel for Plaintiff had again contacted Ms. Heller regarding her Trademark Application Serial No. 85897120, asserting LGI's objection to Application Serial No. 85897120 and use of the mark AIN'T LAURENT WITHOUT YVES.

50.     Defendant failed to respond to the September 23, 2013 letter.

51.     Further communications to Defendant on October 8, 2013, October 16, 2013, December 19, 2013, January 16, 2014, and January 17, 2014 attempting to obtain response to its September 23, 2013 letter all went unanswered.

52.     On January 20, 2014, Defendant responded to the January 17, 2014 letter by denying liability for infringement of LGI's Marks and offering to sell the AIN'T LAURENT WITHOUT YVES Mark to Plaintiff.

53.     On February 1, 2014, Defendant repeated her refutation of claims and offer for purchase of the AIN'T LAURENT WITHOUT YVES Mark.

54.     On February 4, 2014, Plaintiff again demanded cessation of all infringing conduct.

55.     Defendant responded on February 4, 2014 and offered to sell the Plaintiff the infringing AIN'T LAURENT WITHOUT YVES Mark, re-stating her claims of lack of wrongdoing.

56.     In a letter dated February 21, 2014, Defendant was advised that Plaintiff had never offered or agreed to purchase the Defendant's infringing AIN'T LAURENT WITHOUT YVES Mark.

57.     Throughout this time Defendant continued her infringing conduct.  Defendant's infringing conduct remains ongoing.

58.     Defendant's Infringing Mark, which is incorporated into Defendant's Infringing Products, infringes upon LGI's Marks.

59.     Defendant's Infringing Mark incorporates LGI's Marks in their entireties.

60.     Defendant's Infringing Mark as used on Defendant's Infringing Products creates an identical or virtually identical commercial impression to LGI's Marks due to the similarity in sound and appearance and arrangement.

61.     Defendant's Infringing Mark as used on Defendant's Infringing Products utilizes an identical typeset and arrangement to that of LGI's SAINT LAURENT PARIS Mark in a side-by-side comparison of the marks appears below:

**SAINT LAURENT**
**PARIS**


Plaintiff's Mark                    Defendant's Infringing Mark

62.     Defendant's Infringing Mark infringes upon LGI's Marks.

63.     Defendant Infringing Mark is likely to cause consumer confusion.

64.     Upon information and belief, Defendant is intentionally attempting to pass its Infringing Products off as Plaintiff's products in a manner calculated to deceive Plaintiff's customers and members of the general public in that Defendant has applied a nearly identical mark to LGI's marks to goods of the kind Plaintiff regularly markets and sells.

65.     Defendant's Infringing Products are made of lesser quality materials than clothing sold under LGI's Marks.

66.     Upon information and belief, the Defendant is engaged in a pattern of deliberate and willful infringement designed to confuse and deceive consumers as to the source and origin

of its products and trade upon the valuable intellectual property, good will and reputation of luxury brands, including Plaintiff.

67.     The Defendant's infringing and intentional conduct is further confirmed by its activities directed to other luxury fashion brands. See attached Exhibit C, showing Defendant's products infringing upon other luxury brands including CHANEL, DIOR, HERMES, etc.

68.     Defendant was sued on October 3, 2014 in this Court by Chanel, Inc. for trademark infringement of the famous interlocking CC monogram. *See Chanel, Inc. v. Jeanine Heller d/b/a/ What About Yves*, Southern District of New York Case No. 14-CV-08011.

69.     Defendant has engaged in a pattern of deliberate and willful infringement designed to misappropriate Plaintiff's trademarks, confuse consumers as to the source of its products and trade upon the valuable good will and reputation of Plaintiff's intellectual property.

70.     Defendant is not now, nor has she ever been, associated, affiliated or connected with, or endorsed or sanctioned by LGI.

71.     This confusion causes irreparable harm to Plaintiff and weakens the distinctive quality of LGI's Marks.

72.     Plaintiff has lost revenue and incurred damage as a result of Defendant's wrongful and infringing conduct.

73.     Defendant is intentionally trading on the goodwill and reputation of Plaintiff and creating the false impression that Defendant is somehow affiliated with or connected to Plaintiff and that Defendant's goods are Plaintiff's legitimate products.

74.     Defendant has unfairly benefited and profited from Plaintiff's outstanding reputation for high quality products and significant advertising and promotion of LGI's Marks.

75.     Plaintiff has no control over the nature and quality of the products sold by Defendant bearing the Infringing Mark.

76.     Defendant's distribution, sale, offers of sale, promotion and advertisement of its Infringing Products bearing the Infringing Mark has tarnished the goodwill of the Yves Saint Laurent SAINT LAURENT Marks and SAINT LAURENT PARIS.

77.     As a direct and proximate result of the acts of the Defendant alleged above, Plaintiff has already suffered irreparable damages and lost revenues.

## COUNT I
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

78.     Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 77, inclusive, and the acts of the Defendant asserted therein, as if fully recited in this paragraph.

79.     Upon information and belief, subsequent to Plaintiff's adoption and use of the SAINT LAURENT Marks on its products and after LGI's federal trademark application for the SAINT LAURENT Marks, Defendant began selling, offering for sale, distributing, promoting and advertising the Infringing Products in interstate commerce incorporating the Infringing Mark.

80.     The Infringing Mark used by Defendant in interstate commerce is identical to, or substantially indistinguishable from LGI's Marks.

81.     Defendant's unauthorized use of the Infringing Mark, as set forth above, is likely to cause confusion, mistake and deception.

82.     Defendant's unauthorized use of the Infringing Mark, as set forth above, is likely to cause the public to believe that Defendant's Infringing Products are the same as Plaintiff's products or that Defendant is authorized, sponsored or approved by Plaintiff or that Defendant is affiliated, connected or associated with or in some way related to Plaintiff.

83.     Defendants' unauthorized use of the Infringing Mark, as set forth above, is likely to result in Defendant unfairly benefiting from Plaintiff's advertising and promotion and profiting from the reputation of Plaintiff and LGI's Marks all to the substantial and irreparable injury of the public, Plaintiff and LGI's Marks and the substantial goodwill represented thereby.

84.     Upon information and belief, Defendant's acts are both willful and malicious.

85.     Defendant's acts, as alleged herein, constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114 and have damaged Plaintiff in an amount not yet subject to determination.

## COUNT II
## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP (15 U.S.C. § 1125(a)

86.     Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 85, inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

87.     The Infringing Products sold by the Defendant incorporate the Infringing Mark and constitute False Designation of Origin of goods sold by the Defendant and false representations that Defendant's goods are sponsored, endorsed, licensed or authorized by, or affiliated or connected with Plaintiff.

88.    By virtue of U.S. Trademark Registration Nos. 0767211; 1712998; 0851445; 0901660; 1699148; 1745483; 1770566; and 1680439, and others, and U.S. Trademark Application Serial Nos. 85799140 and 85799160, as well as Plaintiff's first use, promotion of and notoriety garnered by LGI's YSL and SAINT LAURENT Marks, LGI's Marks are well known and famous and serve as a source identifying function designating Plaintiff as their source.

89.    Defendant, without the consent or authorization of Plaintiff, has adopted and utilized a mark which infringes upon LGI's Marks.

90.    Defendant's use of the Infringing Mark upon the Infringing Products is likely to cause and to have caused purchasers in interstate commerce to be confused, misled or deceived between Plaintiff's products and Defendant's Infringing Products.

91.    Upon information and belief, Defendant knowingly adopted and used copies, variations, simulations or colorable imitations of LGI's Marks with full knowledge of Plaintiff's intellectual property rights in LGI's Marks.

92.    Defendant's activities, as alleged herein, constitute Unfair Competition and False Designations of Origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and have damaged Plaintiff in an amount not yet subject to determination.

## COUNT III

## DILUTION (15 U.S.C. § 1125 (c))

93.    Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 93, inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

94.    The YSL Marks are "famous" within the meaning of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

95.    Defendant commenced use of the Infringing Mark in commerce after the YSL Marks had become famous and distinctive.

96.    By applying the Infringing Mark to Defendant's Infringing Products, which are of a lesser quality and workmanship than those of Plaintiff, Defendant has injured and will continue to injure Plaintiff's business reputation, has tarnished the famous YSL Marks, and have lessened the capacity of LGI's famous YSL Marks to identify and distinguish Plaintiff's goods, in violation of 15 U.S.C. § 1125(c).

97.    Defendant's advertisement, manufacture, distribution, sale and/or offer for sale in commerce of the Infringing Products bearing the Infringing Mark is likely to cause dilution by blurring, and/or dilution by tarnishment, of the distinctive quality of the YSL Marks.

98.    Defendant's acts, as alleged herein, were done with the willful intent to trade on LGI's reputation and/or to cause dilution of the YSL Marks.

99.    Defendant's activities, as alleged herein, constitute Dilution under section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and have damaged Plaintiff in an amount not yet subject to determination.

## COUNT IV

## COMMON LAW UNFAIR COMPETITION

100.    Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 99, inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

101.    Upon information and belief, the Defendant adopted and used the Infringing Mark on the Infringing Products with full knowledge of Plaintiff's rights in LGI's Marks.

102.    The sale by Defendant of the Infringing Products bearing the Infringing Mark has resulted in the misappropriation of and trading upon Plaintiff's good will and business reputation at Plaintiff's expense and at no expense to the Defendant.

103.    Defendant's misappropriation of Plaintiff's good will, as symbolized by LGI's Marks, has unjustly enriched the Defendant.

104.    Defendant's misappropriation of Plaintiff's good will, as symbolized by LGI's Marks, has damaged Plaintiff.

105.    Defendant's misappropriation of Plaintiff's good will, as symbolized by LGI's Marks, has confused and/or deceived the public and consumers.

106.    Defendant's acts are both willful and malicious.

107.    Defendant's activities, as alleged herein, constitute unfair competition with Plaintiff and have damaged Plaintiff in an amount not yet subject to determination.

## COUNT V

## DECEPTIVE TRADE PRACTICES (N.Y. General Business Law § 349)

108.    Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 107, inclusive, and the acts of the Defendant asserted therein, as if fully recited in this paragraph.

109.    Defendant has misappropriated and is misappropriating significant aspects of LGI's Marks.

110.    Defendant's Infringing Products bearing the Infringing Mark are in direct competition with Plaintiff's products bearing LGI's Marks.

111.   Defendant's Infringing Mark, as used on the Infringing Products, is likely to deceive consumers into believing that the Infringing Products bearing the Infringing Mark are products of Plaintiff, or are associated with or authorized by Plaintiff, when they are, in fact, not.

112.   Defendant's advertising, display and sale of Infringing Products bearing the Infringing Mark are illustrative of Defendant's established pattern of infringement of luxury brands, including the CHANEL, DIOR, HERMES, and the YSL and SAINT LAURENT Marks. See Exhibit C.

113.   By reason of the acts and practices as herein alleged, Defendant has engaged in deceptive trade practices or misleading activities in the conduct of business, trade or commerce, or furnishing of goods and/or services, in violation of § 349 of the New York General Business Law.

114.   The public is likely to be damaged as a result of those deceptive trade practices or activities.

115.   Defendant's activities, as alleged herein, constitute deceptive trade practice pursuant to New York General Business Law § 349 and have damaged Plaintiff in an amount not yet subject to determination.

## COUNT VI

## INJURY TO BUSINESS REPUTATION (N.Y. General Business Law § 360-l

116.   Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 115, inclusive, and the acts of Defendant asserted therein, as if fully recited in this paragraph.

117.   Defendant's Infringing Mark mimics LGI's Marks.

118.    By applying the Infringing Mark to Defendant's Infringing Products, which are of a lesser quality than those of Plaintiff, Defendant has injured and will continue to injure Plaintiff's business reputation, has tarnished the distinctive quality of LGI's famous YSL and SAINT LAURENT Marks, and have lessened the capacity of LGI's famous YSL and SAINT LAURENT Marks to identify and distinguish Plaintiff's goods, in violation of N.Y. General Business Law § 360-l.

119.    Defendant is likely to continue its pattern of infringement of LGI's Marks (See Exhibit C), thereby continuing the injury to Plaintiff's business reputation, unless enjoined.

120.    Defendant's activities, as alleged herein, constitute injury to business reputation and dilution pursuant to New York General Business Law § 360-l and have damaged Plaintiff in an amount not yet subject to determination.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by a jury on all issues triable by right of jury. **WHEREFORE**, Plaintiff LGI prays:

(1)    That the Defendant be required to account for and pay over all gains, profits, and advantages derived by the Defendant and any damages sustained by Plaintiff as a result of its infringement of LGI's Marks, as enumerated herein.

(2)    That the Defendant be required to account for and pay over all gains, profits, and advantages derived by the Defendant and any damages sustained by Plaintiff as a result of the Defendant's activities constituting Unfair Competition, as enumerated herein.

(3)    That the Defendant be required to account for and pay over all gains, profits, and advantages derived by the Defendant and any damages sustained by Plaintiff as a

result of the Defendant's activities constituting Common Law Unfair Competition, as enumerated herein.

(4)     That the Defendant be required to account for and pay over all gains, profits, and advantages derived by the Defendant and any damages sustained by Plaintiff as a result of the Defendant's activities constituting Deceptive Trade Practices, as enumerated herein.

(5)     That pursuant to 15 U.S.C. §1116, N.Y. General Business Law  § 360-l and the equity jurisdiction of this court, the Defendant, her agents, employees, or representatives, and all persons in privity therewith be permanently enjoined and restrained from using on or in connection with the sale, offering for sale, distribution, exhibition, display or advertising of its goods through the Internet or otherwise, the Infringing Mark, or any article confusingly or deceptively similar to or colorable imitative of LGI's YSL and/or SAINT LAURENT Marks, and from publishing, selling, marketing, or otherwise disposing of any copies of Defendant's material which have been derived in any manner by infringement of Plaintiff's YSL and/or SAINT LAURENT Marks.

(6)     That pursuant to 15 U.S.C. §1116 and the equity jurisdiction of this court, the Defendant, her agents, employees, or representatives, and all persons in privity therewith be permanently enjoined and restrained from using on or in connection with the sale, offering for sale, distribution, exhibition, display or advertising of its goods through the Internet or otherwise, LGI's trademarks, or any article confusingly or deceptively similar to or colorable imitative of LGI's YSL and/or SAINT LAURENT Marks.

(7)     That the Defendant and her agents, employees, or representatives, and all persons in privity with the Defendant deliver up to this Court, pursuant to 15 U.S.C. § 1118, any products in their possession bearing the Infringing Mark or any colorable imitation, for the purpose of destruction thereof.

(8)     That, because of the willful nature of the infringements, the amounts of actual damages be trebled as provided for in 15 U.S.C. § 1117.

(9)     That, pursuant to 15 U.S.C. § 1117, Defendant be required to pay to Plaintiff the costs of this action, including attorneys' fees and disbursements incurred.

(10)    Any such other and further relief as this Court deems just and equitable.

Respectfully submitted for Plaintiff,

By: _____

Jess M. Collen (JC 2875)
Oren Gelber (OG 1109)
COLLEN *IP*
The Holyoke-Manhattan Building
80 South Highland Avenue
Town of Ossining
Westchester County, New York 10562
jcollen@collenip.com
ogelber@collenip.com
(914) 941-5668
(914) 941-6091 (facsimile)

Dated: April 16, 2015

P:\P\P5\P506_Complaint_150113.docx